THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Anthony D. McNeal (K69007), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 15 C 1849 |
| v. | ) | |
| | ) | Judge Amy J. St. Eve |
| Sgt. L. Palmer, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Anthony D. McNeal, currently an Illinois prisoner confined at Pontiac Correctional Center, brought this *pro se* 42 U.S.C. § 1983 lawsuit. Plaintiff alleges that, while incarcerated at Stateville Correctional Center, Defendants Sergeant Lanel Palmer and Lieutenant Calvin Bell failed to protect him from an assault by three other inmates that occurred on March 27, 2013.

Currently before the Court is Defendants' motion for summary judgment [59]. For the reasons stated herein, Defendants' motion for summary judgment [59] is granted.

**I.    Local Rule 56.1**

A district court may insist on strict compliance with its local rules regarding summary judgment. *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004). A court may decide a motion based on the factual record outlined in the parties' Local Rule 56.1 Statements of Material Facts. *Id.* (internal citation omitted). Although Plaintiff is *pro se*, he nonetheless must comply with Local Rule 56.1. *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 Fed. App'x 642, 643 (7th Cir. 2011); *see Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006)("even *pro se* litigants must follow rules of civil procedure").

Defendants filed a Local Rule 56.1(a)(3) Statement of Material Facts along with appropriate supporting documentation. Consistent with the Local Rules, Defendants served Plaintiff with a Local Rule 56.2 Notice to Pro Se Litigant Opposing Motion for Summary Judgment. [61] That notice explained, among other things, Plaintiff's need to respond to Defendants' Statement of Material Facts with documentation supporting any disagreement with the facts as presented by Defendants. Notwithstanding this, Plaintiff has not submitted a response to Defendants' Local Rule 56.1 Statement of Material Facts, nor has he submitted his own statement of additional material facts. Accordingly, the facts set forth in Defendants' Local Rule 56.1(a)(3) Statement are deemed admitted to the extent they are supported by evidence in the record. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012). Because Plaintiff is proceeding *pro se*, however, the Court has considered the factual assertions he makes in his response to Defendants' summary judgment motion [68], but only to the extent he has pointed to evidence in the record or could properly testify himself about the matters asserted. *Antonelli v. Sherrow*, 02 C 8714, 2005 U.S. Dist. LEXIS 20912, at *5–*6 (N.D. Ill. Sept. 21, 2005); *see Boykin v. Dart*, No. 12 C 4447, 2014 U.S. Dist. LEXIS 156010 (N.D. Ill. November 4, 2014) ("Although the Court is entitled to demand strict compliance with Local Rule 56.1, it ordinarily affords *pro se* plaintiffs significant leeway in responding to summary judgment filings.").

II.     Facts

Plaintiff is an inmate currently incarcerated at Pontiac Correctional Center. Plaintiff filed suit under 42 U.S.C. § 1983 alleging that Defendants Lanel Palmer and Calvin Bell violated his Eighth Amendment rights by failing to protect him from other inmates with respect to an ncident that occurred on March 27, 2013. [62 at ¶ 1]

Plaintiff's current out-date from prison is 2093. Plaintiff was convicted of aggravated robbery, attempted robbery, burglary, residential burglary, robbery, residential burglary, aggravated criminal sexual abuse with a weapon, armed robbery, home invasion with armed force and two additional convictions for aggravated criminal sexual assault with a weapon. [*Id.* at ¶ 2]

Plaintiff alleges that he used to be a Gangster Disciple, but renounced his affiliation while incarcerated at Cook County Jail in 2004. Plaintiff did not inform anyone at the Illinois Department of Corrections that he renounced his affiliation and does not know whether any Cook County Officials informed anyone at IDOC. [Id. at ¶ 3]

Plaintiff wrote a letter to Internal Affairs and Officer Clements called him to Internal Affairs a few days later, on March 25, 2013. Plaintiff notified Internal Affairs of a "few hits" by the Gangster Disciples on their own members. [*Id.* at ¶ 4] When Plaintiff returned from Internal Affairs, another inmate, Pee-Wee, asked him where he just came from and Plaintiff told Pee-Wee that he had come from the health care unit. Although Plaintiff alleges that Sergeant Palmer told this other inmate that Plaintiff was returning from Internal Affairs, Plaintiff testified that he did not hear Sergeant Palmer say that Pee-Wee or anyone else. Plaintiff also alleges that Pee-Wee told him that he had checked the movement sheet and saw that Plaintiff was returning from Internal Affairs. [*Id.* at ¶ 5]

Approximately one hour later, Pee-Wee told Plaintiff that he had to check into protective custody pursuant to gang protocol. Plaintiff did not try to check into protective custody at that time. Plaintiff testified that, the following day, Correctional Officer Griffin told him that protective custody did not have any room for him. Plaintiff stayed in his cell the entire day on

March 26, 2013, and officers on the other two night shifts also told him that there was no room in protective custody. [*Id.* at ¶ 6] Plaintiff testified that on March 27, 2013, he told Correctional Officer Hopson that he needed to check into protective custody and was told that protective custody was full and that he had to fill out a form. At lunch time that day, Plaintiff took all of his belongings out of his cell and requested that he be either sent to protective custody or segregation. [*Id.* at ¶ 7] Plaintiff did not tell any of the security staff any specific names as to who had threatened him. Instead, Plaintiff told them that the "GDs organization" was threatening him. [*Id.* at ¶ 8]

On March 27, 2013, while Plaintiff was in the chow hall, three individuals got up and walked toward him. According to Plaintiff, he did not do anything because he did not know what they were doing. Plaintiff thought they were walking to the garbage can. [*Id.* at ¶ 9] According to Plaintiff, one of these individuals hit him in the head with a tray and the other two began punching and kicking him. Plaintiff identified one of the individuals after the assault because he continued hitting Plaintiff until security arrived, but did not learn the identity of the other two individuals. [*Id.* at ¶ 10]

### III. Summary Judgement Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there

4

is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). A court's "job when assessing a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

## IV. Analysis

Defendants argue that they are entitled to summary judgment on the basis that they were not aware of any specific threats to Plaintiff and therefore cannot be found to have been deliberately indifferent to the risk of harm to him. [60 at 5-8] Defendants also argue that they are entitled to qualified immunity. [*Id.* at 8-10]

### A. Failure to Protect Claim

In his complaint, Plaintiff alleges that Defendants Sergeant Palmer and Lieutenant Bell failed to protect him from the assault that occurred on March 27, 2013 in the chow hall. [1 at 4-5] Correctional officials have a constitutional duty to protect inmates "from violence at the hand of other inmates." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Nevertheless, "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Id.* Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398

5

F.3d 904, 913 (7th Cir. 2005). "[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). "In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (citations and quotations omitted).

With respect to Defendant Lieutenant Bell, Plaintiff seeks to hold him liable on the basis that he denied Plaintiff's requests to be placed in protective custody. [1 at 4] Even viewing the evidence in the light most favorable to Plaintiff, Plaintiff did not communicate any specific or direct threat to Defendant Lieutenant Bell (or any other member of the security staff for that matter) prior to the date of the attack. Plaintiff made several requests to be placed in protective custody, and was told there was no room. Plaintiff did not indicate why he sought protective custody or otherwise alert any member of the security staff that he feared for his safety. Plaintiff generally told security staff only that "the GDs organization" was threatening him, but provided no other information. On March 27, 2013, while Plaintiff was in the chow hall eating, three individuals walked up to Plaintiff and began jumping on him. Plaintiff testified that he did nothing when he saw the individuals walking toward him because "didn't know what they were doing." He also testified that he did not know the identities of his attackers, only that "one's name was Johnson." Plaintiff's generalized requests to be placed in protective custody and his

6

vague statement to security staff that the "GDs organization" was threatening him are insufficient to have placed Defendant Lieutenant Bell on notice of any substantial risk of any serious harm before the March 27, 2013 attack. *See Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008) (general requests for help and expressions of fear are insufficient to alert guards to the need for action) *See also Gevas,* 798 F.3d at 480-81 ("Complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge tha the prisoner was in danger.") Without specific knowledge of a threat, Defendant Lieutenant Bell cannot be deemed deliberately indifferent to Plaintiff's safety by refusing Plaintiff's requests to be placed in protective custody prior to the March 27, 2013 attack. *Lewis*, 107 F.3d at 553.

With respect to Defendant Sergeant Palmer, Plaintiff seeks to hold him liable on the basis that he initially placed Plaintiff in danger of assault.[1] [1 at 4] In his response to Defendants' motion, Plaintiff explains that "Defendant Palmer's action in informing Pee-Wee that Plaintiff had just returned from Internal Affairs, and showing him the movement sheet which proves it, was tantamount to labeling Plaintiff a 'snitch.'" [68 at ¶ 6] Plaintiff asserts that "Defendant Palmer cannot engage in such conduct then argue that he had no subjective knowledge that Plaintiff's safety was in jeopardy. The actions of Defendant Palmer is [sic] what placed Plaintiff in that jeopardy." [*Id.* at ¶ 7] Indeed, as Plaintiff points out [*see* 68 at ¶ 5], branding an inmate a snitch can expose him to serious harm and may violate the Eighth Amendment. *See Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008); *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) (citing cases). Plaintiff, however, has failed to submit any evidence to support his "snitch theory" of liability with respect to Defendant Sergeant Palmer. Notably, Plaintiff

---

[1] Defendants do not address this particular basis of liability in their motion, and did not file a reply to Plaintiff's response.

7

testified at his deposition that he did not hear Defendant Palmer tell Pee-Wee that Plaintiff had just returned from Internal Affairs, and that he did not know if anyone else heard the conversation between Defendant Palmer and Pee-Wee. Further, there is no evidence in the record that Defendant Palmer and Plaintiff had any prior dealings with each other or that any animosity existed between them. In short, Plaintiff's theory that Defendant Sergeant Palmer is liable in this action for having deliberately put Plaintiff at risk of assault is supported by nothing more than conjecture and speculation, which does not create a material dispute for trial. *See Matthews v. Waukesha Ctny.*, 759 F.3d 821, 824 (7th Cir. 2014) (Although plaintiff "is entitled to the benefit of reasonable inferences, that does not extend to inferences that are supported only by speculation or conjecture.").

Accordingly, for the reasons discussed above, the Court grants summary judgment in favor of Defendants Sergeant Palmer and Lieutenant Bell.

### B. Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. Qualified immunity acts as a protective shield for "government officials against suits arising out of their exercise of discretionary functions 'so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Jones v. Wilhelm*, 425 F.3d 455, 460 (7th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). Officers who act unreasonably, however, are not entitled to use qualified immunity as a defense. *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1014 (7th Cir. 2006).

Qualified immunity is established through a determination of whether (1) a Defendant's conduct violated a Plaintiff's constitutional rights and (2) whether those constitutional rights

were clearly established at the time of the unlawful act. *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991)). Where it is clear that no constitutional violation has occurred, it is unnecessary to consider whether the defendants are entitled to qualified immunity. *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997). As held above, no jury would find that Defendants violated Plaintiff's constitutional rights. Accordingly, the Court need not consider Defendants' qualified immunity argument.

**V.     Conclusion**

For the reasons stated herein, the Defendants' motions for summary judgment [59] is granted. All claims are dismissed with prejudice. This case is closed on the Court's docket.

If Plaintiff wishes to appeal the final judgment, he may file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, Plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). The Plaintiff is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as

frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury.

_____
AMY J. ST. EVE
United States District Court Judge

Dated: October 3, 2016